# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br>HENRY MANRIQUE ESTACIO<br>NELSON LEONARDO MINA SOL<br>ROBIN BENAVIERA RAMOS<br><br>*Defendant(s)* | )<br>)<br>)  Case No.  8:21-mj-1062-T-SPF<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __January 15, 2021__ in the county of __Hillsborough__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 46 U.S.C. §§ 70503(a) and 70506 (a) and (b) | Conspiracy with intent to distribute five (5) kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, and possession with intent to distribute five (5) kilograms or more of cocaine, while on board a vessel subject to the jurisdiction of the United States. |

This criminal complaint is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature
SA Jeffrey S. Womack, DEA
Printed name and title

Sworn to before me ^by telephone.

Date: 1/23/2021

_____
Judge's signature

City and state: Tampa, FL

SEAN P. FLYNN, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

## Introduction and Agent Background

1. I, Jeffrey S. Womack, am a Special Agent with the United States Drug Enforcement Administration (DEA), and currently assigned to the Tampa District Office. I have been a law enforcement officer for approximately 27 years, 17 of those years I have served as a Special Agent with the DEA. During this time, I have served as a Special Agent assigned to the DEA-Miami Field Division and to the DEA-Bogota Country Office in Bogota, Colombia. I have conducted numerous criminal drug investigations of both domestic and international drug trafficking organizations involved in the manufacturing, distribution, and possession of controlled substances such as cocaine, methamphetamine, marijuana etc.

2. Since July 2019, I have been assigned as a Special Agent to the Operation Panama Express Strike Force. Operation Panama Express is a federal Organized Crime Drug Enforcement Task Force ("OCDETF") composed of the following agencies: the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigation ("FBI"), Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), CGIS, the United States Coast Guard ("USCG"), and the United States Attorney's Office of the Middle District of Florida. Special Agents assigned to Operation Panama Express investigate Transnational Criminal Organizations that utilize maritime conveyances to smuggle illicit drugs through international waters of the Pacific Ocean and Caribbean Sea for later distribution into the United States of America.

## Statutory Authority

3. I submit this affidavit in support of a criminal complaint charging that beginning on an unknown date and continuing through on or about January 15, 2021, while aboard a vessel subject to the jurisdiction of the United States, the defendants, HENRI MANRIQUE-ESTACIO, NELSON LEONARDO MINA-SOL, and ROBIN BENAVIERA-RAMOS, did knowingly and willfully combine, conspire, and agree with each other and with other persons, to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 46, United States Code, Sections 70503(a) and 70506(a) and (b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

4. The averments contained in this Affidavit are based upon my personal knowledge and/or reliable information related to me by other law enforcement officers with whom I have worked on this investigation. Because of the limited purpose of this Affidavit, however, I have not included each fact known to me or other law enforcement agents concerning this investigation. I have included only those facts I believe are necessary to establish probable cause supporting the requested complaint.

## Probable Cause

5. The United States Coast Guard (USCG) has the authority under 14 U.S.C. § 89 to make inquiries, examinations, inspections, searches, seizures, and

arrests upon the high seas and waters over which the United States has jurisdiction, in order to enforce United States law.

6. On January 15, 2021, while on routine patrol in international waters of the Eastern Pacific Ocean, the United States Coast Guard Cutter (USCGC) CAMPBELL detected an unknown-type Low Profile Vessel (LPV) in international waters, approximately 145 nautical miles NW of Buenaventura, Colombia. The USCGC CAMPBELL diverted to intercept the suspect LPV. The USCG CAMPBELL launched a small boat with USCG boarding teams onboard to investigate the vessel.

7. The boarding team on the USCG small boat gained control of the LPV without incident. The USCG boarding team was unable to completely search the interior of the LPV due to the interior of the vessel was slowly flooding with incoming water. The boarding team identified the following crewmembers on board the suspect LPV as HENRI MANRIQUE-ESTACIO, NELSON LEONARDO MINA-SOL, and ROBIN BENAVIERA-RAMOS.

8. The master of the suspect LPV was identified as ROBIN BENAVIERA-RAMOS. No registration number, no vessel name, no homeport, nor any painted-on markings were observed by the USCG boarding team. The master of the vessel made a verbal claim of Colombian Nationality for the vessel. However, Colombian Authorities were unable to confirm or deny Colombian registry for the LPV. The USCG then assimilated the LPV as stateless and subject to the laws of the

United States. The USCG boarding team subsequently attempted to conduct a law enforcement boarding of the sinking LPV.

9. The boarding team observed bales of suspected contraband within the vessel, but were unable to conduct a complete search due to multiple-bales were obstructing the passageway. The USCG boarding team did recover one bale of suspected cocaine and conducted two tests of the white-powder contents utilizing Narcotic Identification Kits (NIK) that were positive for the presence of cocaine. That bale was recovered by the USCG boarding team consisted of 30 packages of cocaine weighing a total of approximately 30 kilograms. The USCG boarding team seized the cocaine and detained the three crewmembers prior to the LPV sinking.

## Conclusion

10. Based upon the foregoing information, I respectfully submit that probable cause exists to believe that the following three defendants named herein, HENRI MANRIQUE-ESTACIO, NELSON LEONARDO MINA-SOL, and ROBIN BENAVIERA-RAMOS, while aboard a vessel subject to the jurisdiction of the United States, knowingly and willfully combined, conspired, and agreed with each other and with other persons to distribute and possess with the intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 46, United States Code, Sections 70503(a) and 70506(a) and (b), and Title 21, United States Code, Section 960(b)(1)(B)(ii).

Jeffrey S. Womack
Special Agent, DEA

^ by telephone
Sworn to before me in Tampa, Florida
This 23nd day of January 2021.

SEAN P. FLYNN
United States Magistrate Judge